[Civ. No. 7632. Fifth Dist. June 29, 1984.]

JAMES RALPH MORRIS et al.,
Plaintiffs, Cross-defendants and Appellants, v.
ATLAS ASSURANCE COMPANY, LTD., et al.,
Defendants, Cross-complainants and Respondents.

**COUNSEL**

Michael J. Piuze for Plaintiffs, Cross-defendants and Appellants.

Thornton, Taylor & Downs, Pamela Levin, Michael F. Scully, Robinson, Palmer & Stanton and William D. Palmer for Defendants, Cross-complainants and Respondents.

## Opinion

**BROWN (G. A.), P. J.**—Plaintiffs and cross-defendants, James Ralph Morris, Sandra Lee Morris, Richard Morris, and Linda Lucas appeal from summary judgments in favor of defendants and cross-complainants, Atlas Assurance Company, Ltd. (Atlas) and Foremost Insurance Company (Foremost). The core issue is whether both or either of separate policies issued by Atlas and Foremost afforded liability coverage to the owner of the Lost Hills Inn, a bar and restaurant. The trial court decided that neither policy afforded coverage. We will affirm as to Atlas and reverse as to Foremost.

This action arises out of an automobile collision which occurred in July 1977. The complaint alleges that plaintiffs were injured when a vehicle driven by Antonio Marquez collided with plaintiffs' vehicle. The Lost Hills Inn, one of the named defendants, is alleged to be a seller of alcoholic beverages. The complaint alleges that the Lost Hills Inn and others provided Marquez with alcoholic beverages despite the fact that they knew, or should have known, that after consuming the alcohol he would drive his car in a dangerous manner. The Lost Hills Inn, at the time pertinent to the complaint, was owned by Maria Luisa Gomez. Ms. Gomez died in August 1977 and by way of a petition pursuant to Probate Code section 721 plaintiffs were granted permission to maintain a civil action against her estate to the limits of applicable liability insurance coverage.

At the time pertinent to the complaint, Ms. Gomez had two liability insurance policies. One, issued by Atlas, was entitled "California Homeowners Policy," described the insured as "Maria Luisa Gomez," and described the location of the residence as being "South Side Highway 46, southwest corner Giddings, Lost Hills, California." Foremost's policy was labeled, "Mobilowners All Risk Policy," named the insured as "Maria Luisa Gomez," with location as "61901 Highway 46 Los [*sic*] Hills, Kern, 93249." The insured mobilehome was also described in the policy. Each of the above policies provided "comprehensive personal liability" coverage.

The location of the Lost Hills Inn relative to the mobilehome insured by the above policies does not appear in the summary judgment record before us. It is, however, uncontradicted that the service of alcoholic beverage for profit, as alleged in the complaint, took place at the Lost Hills Inn.

Atlas and Foremost appeared in the action pursuant to Probate Code section 721 and filed cross-complaints for declaratory relief, contending that they had no duty to indemnify or defend Ms. Gomez' estate because the provisions of their policies excluded coverage for business pursuits and any liability of Ms. Gomez would be predicated upon her business activities.

Atlas and Foremost each filed a motion for summary judgment which was granted by the trial court.

## DISCUSSION

Initially it is observed that the case requires the interpretation of written instruments and is therefore a question of law.  ■  Since the underlying facts are not in dispute, this court is required to make an independent determination of the meaning of the language used in the insurance policies. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].)

The first chore is to determine if the insuring provisions of the policies afforded coverage before turning to a consideration of the specific exclusions. In light of precedent, this task will not detain us long.

Section II of Atlas' policy is entitled "Homeowners Policy—Comprehensive Personal Liability" and provides in relevant part: "This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence."

Part III of Foremost's policy provides for "Comprehensive Personal Liability Insurance" to the insured. It states in pertinent part: "The Company Agrees with the Named Insured—

"A. Personal Liability:

"1. To pay on behalf of an Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage . . . ."

■  In *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089], our Supreme Court summarized the rules applicable to the interpretation of insurance policies. "Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates. Any reasonable doubt as to uncertain language will be resolved against the insurer whether that doubt relates to the peril insured against or other relevant matters. [Citation.] The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert.

[Citation.] An exclusionary clause must be conspicuous, plain and clear [citation] and must be construed strictly against the insurer and liberally in favor of the insured [citations]."

■ Although the personal liability provisions of a homeowner's policy generally apply to accidents in and around the home (*Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841]),[1] the policy does cover "the named insured for *all* personal liability not falling within specific exclusionary provisions of the policy" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 99; fn. omitted). In *Reis* v. *Aetna Cas. & Sur. Co. of Illinois* (1978) 69 Ill.App.3d 777, 25 Ill.Dec. 824 [387 N.E.2d 700, 706-707], Aetna contended that language almost identical to the policy language herein barred coverage of its homeowner's policy. The Illinois court disagreed and stated: "However, a homeowner's liability policy, in the absence of an express provision to the contrary, is not a policy providing limited coverage only applicable on the designated premises; rather it is designed to be a broad type of coverage protecting the insured nearly everywhere. Where, as here, the homeowner's policy 'agreed to pay . . . all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence' and contains no other provision describing what coverage is provided, the insurer is liable for any accident for which the insured may be legally liable unless coverage is expressly excluded."

■ The rules of interpretation regarding insurance contracts also require that coverage clauses be interpreted broadly so as to afford the greatest possible protection, while exclusionary clauses are to be interpreted narrowly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 101-102.)

Significantly, the provision in each of these policies is entitled "comprehensive" personal liability. In a context involving insurance, "comprehensive" is defined as "covering all hazards of a given type with the exception of individual hazards specif. [specifically] excluded." (Webster's Third New Internat. Dict. (1961) p. 467.)

■ Both of these provisions appear to provide the insured with broad personal liability insurance for all personal liability, limited only by the specific exclusionary provisions of each respective policy. Given the rule

---

[1]*Herzog* expressly recognized that personal liability provisions of a homeowner's policy also provide coverage for certain accidents occurring away from the home. (*Herzog* v. *National American Ins. Co., supra,* 2 Cal.3d 192, 197, fn. 2.)

of construction that "coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured . . ." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 101), and the fact that comprehensive personal liability insurance provisions in homeowners' policies cover the insured "for *all* personal liability not falling within specific exclusionary provisions of the policy . . ." (*id.,* at p. 99; fn. omitted), we conclude that the personal liability provisions of both of these policies provided the insured (Ms. Gomez) personal liability insurance that would cover the liability potentially involved in this case, subject only to the specific exclusionary provisions of the policy.

Turning to the policy exclusions, we note that the wording in the two policies is different.

The relevant Atlas exclusion states: "This policy does not apply:

"1. Under Coverage E—Personal Liability . . . .

"d. to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits; . . ."

Plaintiffs argue that the language in this Atlas exclusion is uncertain and ambiguous and discuss several cases from other jurisdictions in support of this argument. Atlas, however, points out that an exclusion almost identical to the one involved in this case was found to be "unequivocal" by the California Supreme Court in *Crane* v. *State Farm Fire & Cas. Co., supra,* 5 Cal.3d 112, 117. We agree with the *Crane* court and find the exclusion to be applicable to the case at hand.

Although the court in *Crane* was primarily concerned with the "ordinarily incident to nonbusiness pursuits" phrase in the exclusion, the court interpreted the whole exclusion and found it to be unequivocal. The court said that the interpretation it rendered was "compelled by the language of the provision: the exclusion applies to *any* business pursuit of an insured other than 'activities *therein*' which are ordinarily incident to nonbusiness pursuits." (*Id.,* at p. 116; first italics added.) We concur. The language of the exclusion clearly applies to "any business pursuit" and is not ambiguous.

Although appellants cite out-of-state cases which have found similar exclusions to be ambiguous, the courts in those cases found the ambiguity in the "ordinarily incident to nonbusiness pursuit" language and not with the part of the exclusion at issue here. (See *Gulf Insurance Co.* v. *Tilley* (N.D. Ind. 1967) 280 F.Supp. 60; *Milwaukee Mut. Ins. Co.* v. *City of Minneapolis*

(1976) 307 Minn. 301 [239 N.W.2d 472].) Because we consider the exclusion in the instant case to be clear and unambiguous, and because the issue in the instant case does not deal with activities that are "ordinarily incident to nonbusiness pursuits," we do not feel bound by the cases cited by appellants.

Because the exclusion clearly applies to "any business pursuit" and any potential liability on Atlas' part is predicated on a business activity conducted by Gomez in connection with her business, the trial court was correct in granting Atlas' motion for summary judgment.

Next we take up the Foremost exclusion. The relevant part reads: "Part III [Comprehensive Personal Liability Insurance] of this policy does not apply:

"
. . . . . . . . . . . . . . . . . . . . . . .

"2. to business pursuits of any kind conducted by any person on premises, but activities which are ordinarily part of non-business pursuits of an Insured are covered under Personal Liability Medical Payments . . . ."

As is apparent, unlike the Atlas policy this exclusion in the Foremost policy ties the business pursuits exclusion to those conducted "on premises." The key to the interpretation of this provision rests upon the meaning of "premises."

"Premises" is defined in the Foremost policy as:

"PART X—DEFINITIONS

"
. . . . . . . . . . . . . . . . . . . . . . .

"Premises: the mobile home described in the Declarations, with the land upon which it rests while on blocks or leveling jacks with utilities connected and while not in transit, including grounds, carports and out-buildings incidental thereto, together with any private approaches under the exclusive control of the Named Insured. For purposes of Part III, the term shall include all premises where the Named Insured or his spouse maintains a mobile home residence and includes private approaches thereto under the control of the Named Insured."

Plaintiffs contend that this exclusion provision does not exclude insurance coverage in this case because the business pursuit involved (serving Mr. Marquez an alcoholic drink) did not occur on the "premises" (the mobile-

home) and thus is covered under the policy. Foremost, on the other hand, argues that the Lost Hills Inn is on the "premises" and therefore is within the language of the exclusion.

As has been stated, the evidence before the trial judge on the motions for summary judgment does not show where the Lost Hills Inn was located in relation to the mobilehome. However, we have concluded that the exclusion does not apply wherever the inn may have been located in relation to the mobilehome. The definition of "premises" compels this result.

Preliminarily we note there has been some suggestion that the definition of "premises" is imprecise and somewhat ambiguous. However, as in *Herzog* v. *National American Ins. Co., supra,* 2 Cal.3d 192, we do not believe that it is so ambiguous as to defy reasonable construction in the context of this case. *Herzog* said: "We do not suggest any doubt as to the validity of the principle that doubts as to meaning must be resolved against the insurer. (See *Gray* v. *Zurich Ins. Co.* [1966] 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].) We do suggest that language which might be considered ambiguous as applied to some circumstances is not necessarily ambiguous per se. 'When a geographic area of use is specified, it may be necessary to construe the policy provision to determine when a use made by the insured comes within the policy provision. While ambiguities are to be construed in favor of the insured, the construction of the policy should not negate geographical limitations which were clearly intended.' (12 Couch on Insurance 2d (1964), § 45.150; fns. omitted.)" (*Id.,* at pp. 198-199, fn. 5.)

"Premises," as described in Foremost's policy, includes "the mobile home . . . with the land upon which it rests . . . including grounds, carports and out-buildings incidental thereto, together with any private approaches . . . ."

Black's Law Dictionary (5th ed. 1979), page 686, column one, defines "incidental" as: "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose."

The Lost Hills Inn, being a business, was not dependent upon the mobilehome or related to the principal use of the mobilehome as a residence. In this sense, neither the ground upon which the Lost Hills Inn rested nor its operation as a business was incidental to the use of the mobilehome as a residence or the grounds upon which the mobilehome rested.

Since the exclusion only applies to business pursuits conducted on the "premises" and the business pursuit involved in the instant case did not

occur on the "premises" as defined in the policy, it is clear that the comprehensive personal liability insurance provided by Foremost is not excluded by the business pursuits exclusion. Because coverage is not excluded, we hold that the Foremost policy does provide personal liability insurance coverage for the estate of Ms. Gomez.

Foremost also argues that the insured would not have had any expectation whatsoever that the policy would provide coverage for the matters alleged in the complaint. In support of this contention, respondent points out that the premium was comparatively small and the insured could have acquired business insurance to specifically cover her business activities. Although the points raised by respondent in support of its argument are proper considerations in evaluating the reasonable expectation of the insured (*Hartford Fire Insurance Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 417 [191 Cal.Rptr. 37]), we do not consider them to be persuasive here. ■ "[T]he doctrine of reasonable expectation of coverage comes into play only where there is an ambiguity present in the policy." (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695].) There is no ambiguity here which defies interpretation, and the doctrine of reasonable expectation need not be relied upon by the plaintiffs to establish coverage.

We conclude that the trial court erred in granting summary judgment to Foremost.

The judgment as to Foremost is reversed; the judgment as to Atlas is affirmed.

Costs on appeal are awarded to plaintiffs against Foremost, and to Atlas against plaintiffs.

Franson, J., and Van Auken, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 22, 1984.

---

*Assigned by the Chairperson of the Judicial Council.