[No. 35131-1-I.    Division One.    August 21, 1995.]

LANCE M. ROBERTS, *Appellant*, v. THE ALLIED GROUP
INSURANCE COMPANY, *Respondent*.

*William P. Hight* and *Joseph P. Bennett*, for appellant.

*James T. Derrig, Robert F. Riede,* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for respondent.

BAKER, C.J. — Lance M. Roberts appeals the dismissal of his claims against his homeowners insurance company, Allied Group Insurance Company (Allied). Because his replacement cost coverage does not include any increase in costs by reason of changes in the law, and Roberts has not shown that the proposed retaining wall and stepped foundation are physically necessary to replace the dwelling on the same premises, we affirm.

## FACTS

Roberts had all-risk homeowners insurance with Allied when his house was entirely destroyed by fire. The policy included a guaranteed replacement cost endorsement. Allied denied recovery of the costs involved in building a new house under current code requirements and building standards. Allied also denied recovery of the cost to stabilize and contain the property beyond the cost to repair and stabilize the existing foundation.

Roberts demanded an appraisal award, as provided in the policy. A majority of the appraisal panel agreed on the actual cash value of the loss, as well as the cost to replace the dwelling with and without taking into account current code requirements and stabilizing and containing the land.

After the appraisal Roberts brought an action alleging Allied's liability and bad faith. Allied obtained a partial summary judgment ruling that it was not liable for the costs due to current code requirements and building standards, or the cost to stabilize the land and build a containment wall. Allied subsequently obtained another

partial summary judgment dismissing the bad faith claims against it, and ultimately an order dismissing the action.

## I

Whether Roberts' recovery should include any increased cost of rebuilding his house by reason of current building laws depends entirely on the definition of replacement cost coverage. Roberts paid an increased premium for a guaranteed replacement cost endorsement. That endorsement states that Allied "will pay the cost of repair or replacement, but not exceeding the replacement cost of that part of the building damaged, for like construction and use on the same premises." Replacement cost is defined as "the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation."

"Like kind and quality" and "like construction" do not include differences in the new structure necessitated by law.[1] The cases Roberts cites as support for his contrary assertion[2] are inapplicable. In *Starczewski* the court stated, in dicta, that "the average person would believe that 'the amount necessary to repair or replace the damaged property' includes the amount necessary to comply with mandatory building codes enacted after the policy was issued."[3] However, the court appears to have distinguished contrary authority based on the lack of "like kind and quality" language in the policy before it.[4] The insurer in *Garnett* did not point to any definition of replacement cost, but relied exclusively on its law or ordinance exclu-

---

[1]*See, e.g., Gouin v. Northwestern Nat'l Ins. Co.*, 145 Wash. 199, 208-09, 259 P. 387 (1927); *Hewins v. London Assurance Corp.*, 184 Mass. 177, 68 N.E. 62, 64 (1903); *McCorkle v. State Farm Ins. Co.*, 221 Cal. App. 3d 610, 270 Cal. Rptr. 492, 494-95 (1990).

[2]*Starczewski v. Unigard Ins. Group*, 61 Wn. App. 267, 810 P.2d 58, *review denied*, 117 Wn.2d 1017 (1991) and *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 800 P.2d 656 (1990).

[3]*Starczewski*, 61 Wn. App. at 274.

[4]*See Starczewski*, 61 Wn. App. at 273 n.6.

sion to deny recovery for improvements required by law to be incorporated in the repairs to a building that was damaged by fire. The court held that the exclusion could not be applied to limit recovery.[5]

Roberts seeks to distinguish precedent based on the fact that his policy provided guaranteed replacement cost coverage. We reject this argument, because the replacement cost definition in his policy rider is essentially the same as policy language held to not extend recovery to costs attributable to updated building standards.[6]

## II

Roberts also claims coverage for the cost of a stepped foundation and uphill containment wall recommended by an engineer. Prior to the fire, the land did not have a containment wall and the house was built without benefit of a stepped foundation. However advisable it may be to have these amenities, and even if they would be required by current codes prior to rebuilding the house, they are not physically required for reconstruction. Nor did the fire in any way cause such soil stabilization measures to be any more necessary than before the fire. We agree with Allied that these costs are not covered by the policy.

## III

Finally, Roberts argues that an issue of fact exists regarding whether Allied acted in bad faith by limiting his recovery. "A denial of coverage based on a reasonable interpretation of the policy is not bad faith, and even if incorrect, does not violate the Consumer Protection Act if the insurer's conduct was reasonable." (Citations omitted.)

---

[5]*Garnett*, 118 Idaho at 779.

[6]*See, e.g., Gouin*, 145 Wash. at 209; *but see Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292 (Alaska 1994) (holding that "like kind and quality" does not mean built under the building standards of the original construction).

*Transcontinental Ins. Co. v. Washington Pub. Utils. Districts' Util. Sys.*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988).[7]

Allied's interpretation of the extent of recovery under its policy was not only reasonable, it was correct. Roberts does not provide any example of an insurer acting in bad faith when correctly denying coverage or limiting the extent of recovery.

Affirmed.

GROSSE and COX, JJ., concur.

_____

[7]*See also Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986).